UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Metro Motors, LLC, d/b/a
Luther Nissan,

Civ. File No. 00-2120 (PAM/JGL)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

Nissan Motor Corporation in USA,

Defendant.

---

This matter is before the Court on Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment. Although not enumerated as cross-motions for summary judgment, neither party contends that issues of fact preclude disposing of the case. For the reasons that follow, the Court grants in part and denies in part Defendant's Motion, and grants Plaintiff's Motion.

**BACKGROUND**

Plaintiff Metro Motors, LLC, doing business as Luther Nissan ("Metro") has been a Nissan dealer since signing a Franchise Agreement with Nissan Motor Corporation in USA, now known as Nissan North America, Inc. ("Nissan") in 1996. In 1998, Metro began selling and servicing Kia cars at its Nissan dealership. The terms of the Franchise Agreement require Metro to secure Nissan's permission before selling another manufacturer's vehicles at the dealership. (Vlietstra Aff. Ex. 1 at Article Tenth and Ex. B (Franchise Agreement).)

FILED DEC 27 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD DEC 27 2001
DEPUTY CLERK

It is undisputed that Metro did not receive Nissan's permission to add the Kia line to its Nissan dealership. In the summer of 2000, Nissan attempted to persuade Metro to sign an Amendment to the Agreement, which provided that Metro would stop selling Kia cars at the Nissan dealership, and also provided that Metro's failure to return the dealership to exclusively Nissan cars would constitute good cause under Minnesota law for the termination of the Franchise Agreement. Metro refused to sign the Amendment. On August 18, 2000, Nissan informed Metro that, unless Metro signed the Amendment, Nissan would pursue its remedies against Metro, including terminating the Franchise Agreement. (Id. at Ex. 11.) Metro instituted this lawsuit shortly thereafter, claiming that Nissan's conduct violated Minnesota's Motor Vehicle Sale and Distribution Regulations, Minn. Stat. § 80E.01 et seq. ("the Act"). In April 2001, this Court granted in part Nissan's Motion to Dismiss and dismissed three counts of Metro's five-count Amended Complaint.

The two remaining claims of Metro's Amended Complaint seek declaratory judgments that: (1) Nissan's demand that Metro sign the Amendment violated Minn. Stat. § 80E.135; and (2) Nissan's requirement that Metro sign the Amendment or face termination violated § 80E.12(e). In response to the Amended Complaint, Nissan filed counterclaims seeking (1) a declaratory judgment that Metro's sale of Kia at its Nissan dealership constitutes a breach of the Franchise Agreement; and (2) specific performance of the exclusivity provision in the Franchise Agreement.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Entcr. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, as the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

**A. Metro's Motion**

Metro contends that it is entitled to judgment as a matter of law on its claims that Nissan violated the Act. Nissan responds that it did not "require" Metro to relinquish rights under the Act, nor did Nissan threaten Metro with termination in order to secure Metro's agreement to relinquish those rights. Moreover, Nissan contends that Metro has not suffered injury as a result of the alleged violations of the Act, and that entering the declaratory judgments Metro seeks will "serve no useful purpose."

1. Section 80E.12(e)

Section 80E.12(e) makes it unlawful for a manufacturer "to require a new motor vehicle dealer to . . . enter into an agreement with the manufacturer . . . by threatening to

cancel a franchise or any contractual agreement existing between the dealer and the manufacturer." Nissan asserts that it did not "require" Metro to enter into the Amendment, and thus it did not violate this section. In support of its argument, Nissan points to the fact that Metro has continued to sell Kia cars at its Nissan dealership and that Nissan has not terminated Metro's franchise.

Nissan parses the language of the statute too narrowly. The statute prohibits a manufacturer from requiring a dealer to do something "by threatening to cancel a franchise." This is precisely what Nissan did. Nissan told Metro that, unless Metro assented to the Amendment, Nissan would pursue its remedies including termination. The fact that Nissan did not terminate the franchise is evidence of nothing, because under Minnesota law, Nissan was prohibited from terminating the franchise. The Act provides that a manufacturer may not terminate a franchise solely for violation of an exclusivity provision in the franchise agreement. Minn. Stat. § 80E.07, subd. 1(c). Nissan's conduct in this case is precisely what the statute intended to prevent: a manufacturer using threats of termination to force a dealer to sign something not in the dealer's interest. Metro is entitled to the declaratory judgment it seeks on this count.

2. <u>Section 80E.135</u>

Section 80E.135 provides that "no manufacturer . . . shall, . . . during the franchise term, use any written instrument, agreement, or waiver, to attempt to nullify or modify any provision of this chapter." Metro claims that Nissan violated this section by attempting to

force Metro to sign the Amendment which provided that Metro's breach of the exclusivity provision would constitute good cause for the termination of Metro's franchise. Nissan argues that, even if Nissan violated this section, Metro has not suffered any injury by reason of Nissan's violation, and thus that Metro should not get the declaratory judgment it seeks.

As noted in the Order on Nissan's Motion to Dismiss, in relevant part the Act allows suits by "a person injured because of the refusal to accede to a proposal for an arrangement which, if consummated, would be in violation of [the Act]." Minn. Stat. § 80E.17. In its Motion to Dismiss, Nissan argued that Metro did not have standing to bring suit under the Act because Metro had not alleged a sufficient injury. The Order found that the injury required by this sentence of § 80E.17 was constitutional injury-in-fact. According to the Supreme Court, constitutional injury exists if the plaintiff has suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). For the purposes of the Motion to Dismiss, the Court found that Metro had alleged sufficient injury under the Constitution.

Nissan contends that the previous decision does not preclude a determination that, for the purposes of summary judgment, Metro has not suffered a sufficient injury to secure relief under the Act. As noted in the previous Order, however, "the injury to Plaintiff lies in the mere violation of the Act as well as in the fact that Plaintiff is forced to operate with the proverbial 'sword of Damocles' hanging over its head, never knowing when, or if, Nissan

will decide to terminate the Franchise Agreement." Order at 5-6. Thus, the previous Order determined that Metro's alleged injury was sufficient, and the Court will not revisit that determination. Nissan's conduct violated § 80E.135, and Metro is entitled to a declaratory judgment to that effect.

**B. Nissan's Motion**

Nissan asks the Court to enter a declaratory judgment that Metro has breached the terms of the Franchise Agreement, and seeks specific performance of that Agreement, namely an Order directing Metro to stop selling Kia cars at its Nissan dealership. Metro does not oppose Nissan's request for a declaratory judgment, presumably because it is clear that Metro is in breach of the exclusivity provision of the Franchise Agreement.

What Nissan really wants is specific performance of the Agreement. Metro argues that Nissan should not get through specific performance what the Act prohibits. Metro asserts that the Act "provides Metro with a right to be free from such exclusivity requirements." (Pl.'s Opp'n Mem. at 1.) However, the Act does not prohibit exclusivity terms in franchise agreements, it merely provides that the breach of such terms is not by itself good cause for termination of a franchise.

Practically speaking, however, the Act makes it very difficult to enforce exclusivity provisions, and it is clear that such provisions are not favored in Minnesota. When determining whether specific performance is appropriate, the Court must balance the equities of the case. Dakota County HRA v. Blackwell, 602 N.W.2d 243, 244 (Minn. 1999). Here,

one of the factors that must be considered is Minnesota's view of exclusivity provisions in franchise agreements. Moreover, the Franchise Agreement at issue is a document drafted by Nissan. Nissan was or should have been aware that, in Minnesota, enforcement of exclusivity provisions is difficult and may not be effected through termination of a franchise. Thus, if the provision was important to Nissan, it should have included liquidated damages or some other legally permissible penalty for the breach of such provision. This Nissan did not do.

Nissan may not accomplish through specific performance something it cannot accomplish under Minnesota law. Nissan could have ensured that its Minnesota franchisees had an incentive to comply with the exclusivity provision in Nissan's franchise agreement. Its failure to do so does not give rise to the equitable remedy of specific performance. Nissan's request for specific performance is denied.

**C. Attorney's Fees**

Metro contends that it is entitled to recover its reasonable attorney's fees and costs. Minn. Stat. § 80E.17. The statute permits the recovery of fees, but does not make such recovery mandatory. The conduct of Metro that gave rise to this case is far from exemplary. Indeed, as noted above, Metro is in knowing and blatant breach of its contract with Nissan. Such conduct should not be rewarded with the recovery of attorney's fees. Metro's request for fees and costs is denied.

**CONCLUSION**

The Court concludes that both parties are entitled to the declaratory judgments they seek. However, Nissan is not entitled to an order of specific performance.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment (Clerk Doc. No. 39) is **GRANTED IN PART** and **DENIED IN PART**;
2. It is hereby **DECLARED** that Plaintiff breached the terms of the Franchise Agreement by adding Kia sales and service operations to it dealership facilities without obtaining Defendant's prior written consent to the addition;
3. Defendant's Second Counterclaim is **DISMISSED**;
4. Plaintiff's Motion for Summary Judgment (Clerk Doc. No. 37) is **GRANTED**;
5. It is hereby **DECLARED** that:
    a. Defendant's demand that Plaintiff enter into an agreement providing that Plaintiff's failure to maintain or restore an exclusively Nissan facility violated Minnesota law; and
    b. Defendant's threat to cancel Plaintiff's Franchise Agreement unless Plaintiff entered into the Amendment of that Agreement violated Minn. Stat. § 80E.12(e).

6. Metro's request for attorney's fees and costs is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 27, 2001

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*